IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

In re                                         )
                                              )
JUDITH LACY BOZEMAN,            )        CASE NO. 2:20-cv-00403-RAH
                                              )                (WO)
        Debtor.                          )
----------------------------------           )
MORTGAGE CORP. OF THE          )
SOUTH,                                   )
                                              )
        Appellant,                       )
                                              )
v.                                            )
                                              )
JUDITH LACY BOZEMAN,           )
SABRINA L. MCKINNEY,            )
Standing Chapter 13 Trustee For The )
Middle District of Alabama,          )
                                              )
        Appellees.                       )

**MEMORANDUM OPINION AND ORDER**

In this appeal, Mortgage Corporation of the South ("MCS" or "Appellant")

challenges the Order (Doc. 1-2; Doc. 106, BK Case No. 16-bk-32469[1]), issued by

the United States Bankruptcy Court for the Middle District of Alabama

("Bankruptcy Court") on June 9, 2020 that among others concluded that MCS's

mortgage was satisfied and released. For the reasons set forth below, the Court

---

[1] In this Opinion, case numbers are provided in any citation to documents filed in another court or proceeding.

1

affirms the Order, (Doc. 1-2).

## I.    STANDARD OF REVIEW

In an appeal from a bankruptcy court decision, the district court sits as an appellate court. *Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000). The district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and conclusions of law under the *de novo* standard of review. *In re Piazza*, 719 F.3d 1253, 1260 (11th Cir. 2013). "The court may affirm the bankruptcy court's judgment 'on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.'" *Perry v. United States*, 500 B.R. 796, 798 (M.D. Ala. 2013) (Watkins, J.) (quoting *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Judith Lacy Bozeman ("Debtor" or "Bozeman") entered into a note and mortgage with MCS on March 19, 2015. (Doc. 3-76, pp. 5-13.)

Bozeman later filed for Chapter 13 bankruptcy relief on September 7, 2016. (Doc. 3-2.)  As acknowledged by MCS (Doc. 9, p. 26; Doc. 12, p. 11), Bozeman's first proposed plan was a full balance plan, meaning it provided that Bozeman would pay off the MCS debt through the plan. (Doc. 3-5.) The plan estimated that $17,393.04 was the balance owed to MCS and proposed to pay that sum with interest at a specified monthly payment of $418.00 per month. (Doc. 3-5, p. 2.) Bozeman

estimated, with paying the mortgage indebtedness to MCS and nothing to her unsecured creditors, the plan would require payments of $457.00 per month for fifty-eight (58) months.  (Doc. 3-5.)  As to liens, the plan also provided that the secured claim holders shall retain liens until either the liens were released or all payments under the plan were completed.  (Doc. 3-5, p. 1.)

Of importance in this appeal, MCS did not object to the plan. MCS, however, did file a proof of claim ("POC") on official Form 410 on September 16, 2016.  (Doc. 3-136.)  That form provided three lines for MCS to complete concerning its debt, including the "Amount of the claim that is secured," "Amount of the claim that is unsecured," and "Amount necessary to cure any default as of the date of the petition."  (Doc. 3-136, p. 2.)  MCS's POC represented that $6,817.42 was the amount of the claim that was secured <u>and</u> the amount that was necessary to cure any default.  Nothing in the POC disclosed that any additional amounts[2] were owed by Bozeman on the debt, nor did MCS attach a copy of the note and mortgage. Although the POC was largely typed, MCS hand-wrote a notation that the figure of $6,817.42 was "arrearage only."  (Doc. 3-136, p. 2.)  No objection was filed by Bozeman or anyone else to MCS's POC.

Upon her review of the plan, the bankruptcy trustee determined that the plan

---

[2] At the time, an additional $10,575.62 was owed on the note and mortgage.  This amount also was secured.

would pay out in less than the minimum applicable commitment period of thirty-six (36) months.  Therefore, the trustee filed an objection to confirmation of the plan. (Doc. 3-6.)

To make her plan confirmable and to address the trustee's objection, Bozeman filed an amended plan on November 20, 2016 and proposed to increase the payments to the unsecured creditors from 0% to 100%. (Doc. 3-7.) The amended plan did not change Bozeman's treatment of the MCS debt.  Once again, MCS did not object. The amended plan was confirmed on January 14, 2017.  (Doc. 3-9.)

Over two and a half years later, on May 10, 2019, Bozeman made her final payment to the Chapter 13 trustee and thus completed her plan obligations. And on May 13, 2019, the trustee filed her Notice of Completion of Plan Payments and Notice of Final Cure Mortgage Payment ("Notice of Final Cure"). (Doc. 3-10.) The Notice of Final Cure informed the bankruptcy court and all interested parties that MCS's claim in the amount of $6,817.42 had been paid and that the "entire mortgage debt [had been] paid in full through the plan." (Doc. 3-10.)

On May 14, 2019, MCS filed an amended proof of claim and sought to increase the amount of its claim to $15,032.73. (Doc. 3-137.)  MCS also filed a response to the Notice of Final Cure. (Doc. 3-13.) In its response, MCS argued  that MCS's original POC only sought the arrearage on the debt and that while Bozeman paid the full amount required to cure the default owed at the time of filing, Bozeman

did not complete the plan payments because MCS was still owed a balance of $15,032.73.  (Doc. 3-13.)

On June 12, 2019, MCS filed a Motion for Relief From Automatic Stay ("Stay Motion"), claiming that because Bozeman was not making direct payments, the mortgage debt could not be discharged and therefore the automatic stay was lifted. (Doc. 3-109.)

Bozeman countered MCS's Stay Motion by filing a Motion to Deem Lien Satisfied and Release Lien ("Lien Motion").  (Doc. 3-16.) In her motion, Bozeman argued that since this was a full balance plan and since she had made all of her plan payments on the MCS debt, the MCS debt and accompanying mortgage were satisfied and the mortgage due to be released.  (Doc. 3-16.)

The following day, September 13, 2019, MCS amended its proof of claim a second time – this time to increase the amount of the MCS debt to $22,382. (Doc. 3-138.)

In response to both amended proofs of claim, Bozeman objected.  (Doc. 3-62.) After additional briefing by the parties, the Bankruptcy Court conducted an evidentiary hearing and heard argument on Bozeman's objections, Bozeman's Lien Motion, and MCS's Stay Motion.  (Doc. 3-86.)  The Bankruptcy Court then issued a lengthy Memorandum Opinion and Order that granted Bozeman's objections to MCS's amended proofs of claim, sustained Bozeman's Lien Motion, and denied

MCS's Stay Motion.  (Doc. 3-129; Doc. 3-130.)  Since that time, Bozeman has received her discharge in bankruptcy.  (Doc. 1-1, p. 3; Doc. 3-139, p. 1.)

In compliance with the relevant deadline, MCS filed this appeal challenging the Bankruptcy Court's Order to the extent the Bankruptcy Court concluded that MCS's mortgage had been satisfied and therefore was released. (Doc. 1-1, p. 3.)

## DISCUSSION

In its Memorandum Opinion, the Bankruptcy Court concluded, as applicable to this appeal, that "because the indebtedness due Mortgagee has been paid in full, its Motion for Relief from the Automatic Stay is denied" and for the same reason, "Debtor's Motion to Deem mortgage satisfied is granted."[3]  (Doc. 3-129, p. 21.)  In its appeal, MCS claims the Bankruptcy Court erred, not in sustaining the objections to MCS's two amended proofs of claim, but in concluding that the MCS debt was satisfied and therefore that its mortgage lien was due to be released as satisfied. (Doc. 9, pp. 15-38.)  This is so, according to MCS, because "MCS's mortgage lien survives the Chapter 13 case even if this Court upholds Judge Sawyer's grant of Debtor's discharge of the Primary Residence Loan" and because "the lien rights of

---

[3] The Bankruptcy Court also sustained Bozeman's objections to MCS's two amended proofs of claim, concluded that Bozeman was entitled to a discharge under 11 U.S.C. §1328(a), and denied MCS's Stay Motion.  (Doc. 3-22.)  MCS does not appeal from these findings.  (Doc. 12, p. 7.) However, even if MCS challenged the Bankruptcy Court's decision to sustain Bozeman's objections to the proofs of claim, it appears the Bankruptcy Court was well within its discretion to do so since the amended proofs of claim were filed long after Bozeman's plan had been confirmed and her plan obligations satisfied.  *See In re Winn Dixie Stores, Inc.*, 639 F.3d 1053 (11th Cir. 2011); *Hope v. Acorn Financial, Inc.*, 731 F.3d 1189 (11th Cir. 2013).

MCS survive the bankruptcy process regardless of whether or not MCS filed a proof of claim.  (Doc. 9, pp. 17-18.)

For their part, the trustee and Bozeman equally argue that, while the mortgage debt may very well have been more than that reflected in MCS's initial proof of claim, MCS nevertheless was bound by the confirmed plan — to which MCS had notice of, did not object, and in which it actively participated[4] — and that since Bozeman fully complied with that plan, the MCS debt was satisfied and therefore the lien due to be released.  Explaining in further detail, Bozeman and the trustee argue that the plan was not a cure and maintain plan pursuant to 11 U.S.C. § 1322(b)(5) in which the mortgage lien would have survived the bankruptcy, but instead was a full balance plan that required payment of the MCS debt through the plan.  Since it was a full balance plan and since Bozeman made all of her plan payments under the confirmed plan, MCS could not after-the-fact treat the debt differently.  Simply put, if MCS had a problem with how the MCS debt was treated or provided for in the plan, MCS should have objected and should not have misstated the debt on its POC.

---

[4] MCS does not argue, for due process purposes, that it lacked actual notice of the proposed plan, that it did not subject itself to the jurisdiction of the Bankruptcy Court, or that the plan did not provide for its debt.  Nor could it, because MCS actively participated in the bankruptcy proceeding by filing proofs of claim, a motion to dismiss, and a motion for lift of stay, among others.

The pertinent inquiry begins with 11 U.S.C. § 1327(a). Under § 1327(a), "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Further, "[a]s a general rule, the failure to raise an 'objection at the confirmation hearing or to appeal from the order of confirmation should preclude … attack on the plan or any provision therein as illegal in a subsequent proceeding.'" *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993) (citations omitted); *see also In re Smith*, 575 B.R. 869, 876 (Bankr. W.D. Ark. 2017).

Discussing the effect of a confirmed Chapter 13 plan, the United States Supreme Court in *United Student Aid Funds, Inc. v. Espinosa* held that a confirmed Chapter 13 plan is binding on the debtor and creditors with notice, regardless of whether a creditor's claim is impaired under the plan or whether the creditor has accepted the terms of the plan, even if the plan violates the Bankruptcy Code and/or the Bankruptcy Rules. 559 U.S. 260, 269 (2010). *See also In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1057 (11th Cir. 2011) ("a confirmed reorganization plan should be accorded res judicata effect on a creditor's subsequent attempt to amend his claim."); *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686, 1692 (2015) (the terms of a confirmed plan have a "preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the

confirmation order.'"); *In re Edwards*, 603 B.R. 516 (Bankr. S.D. Fla. 2019) (explaining impact of *Espinosa*); *In re Smith*, 575 B.R. 869, 876 (Bankr. W.D. Ark. 2017) (explaining that in *Espinosa*, "the United States Supreme Court emphasized the final and binding nature of confirmation orders, even when a plan contravenes the bankruptcy code"). In *Espinosa*, while noting that the bankruptcy court should not have confirmed a plan that discharged a portion of the debtor's student loan debt without first making a dischargeability determination as required under Section 523(a)(8), the Supreme Court nonetheless held that the confirmed plan "remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object [to confirmation] or timely appeal [the bankruptcy court's confirmation order]." 559 U.S. at 275.

*Espinosa* is where the Bankruptcy Court centered its logic when explaining its treatment of MCS's debt. Bozeman's initial plan, which was not a cure and maintain plan[5], proposed paying the entire MCS debt within the plan. In fact, the proposed plan even provided an estimated figure that was largely consistent with what MCS now says was owed by Bozeman. (*See* Doc. 3-5; Doc. 3-13.) Further, despite MCS's insistence otherwise, the plan did not modify the mortgage and did not violate the anti-modification statute, (*see* 11 U.S.C. § 1322 § (b)(2)), simply because the plan proposed to pay the entire MCS claim with interest through the

---

[5] MCS acknowledges that the initial plan was a full balance plan, not a cure and maintain plan.

plan; prepayment without penalty was a contractual right afforded under the note and mortgage, (*see* Doc. 3-118, p. 8). *See, e.g.*, *In re Sierra*, 560 B.R. 296, 301 (Bankr. S.D. Tex. 2016) ("if the terms of a mortgage allow a debtor to early repayment, then the chapter 13 plan can provide for prepayment notwithstanding § 1322(b)(2)'s prohibition of modification of other non-prepayment terms of a mortgage").

But as Bozeman correctly notes, the figure set forth in the proposed plan was just an estimate and any allowed proof of claim that MCS later filed concerning that debt would supersede it. *See* Bankr. M.D. Ala. L.R. 3015-3 (stating that, if filed without objection, a creditor's claim was deemed allowed and "shall constitute prima facie evidence of the validity and amount of the claim."); Fed. R. Bank. P. 3001(f). *See also In re Mason*, 520 B.R. 508 (Bank. S.D. Miss. 2014). Thus, in application, when MCS filed a claim for a lesser amount than what Bozeman's proposed plan initially identified, the plan was amended down to reflect the amount designated by MCS's proof of claim.

While MCS repeatedly characterizes the confirmed plan as unlawful and illegal, the plan was objectionable. But no matter how unlawful, illegal, or objectionable the plan may have been, MCS chose not to object to it or appeal; instead, MCS filed a proof of claim that did not fully, completely or accurately

disclose its debt.[6] (*See* Doc. 3-136.) Sitting on its hands, the full payment plan was confirmed and once confirmed, became binding on MCS, no matter how objectionable it may have otherwise been. *Espinosa*, a decision that MCS glaringly fails, if not refuses, to address in its briefing to this Court, compels no different outcome.

Independent of the extent to which completion of the confirmed plan affected Bozeman's personal liability on the MCS debt, MCS also argues that its mortgage lien survived the bankruptcy and that MCS was not even required to file a proof of claim. Therefore, according to MCS, that it may have misidentified and misstated its debt should be without consequence. This may be true to some extent under a cure and maintain plan, but not under a confirmed full balance plan as was in place here. Because the full balance plan provided for the MCS debt and because Bozeman satisfied the mortgage lien when she paid and satisfied her obligations relating to the MCS debt under the confirmed plan, the lien does not, and did not, travel through the bankruptcy.

---

[6] MCS repeatedly states that the POC was an "arrears only" claim, and therefore the trustee, debtor, interested parties, and court should have recognized it to mean there were other amounts not in arrears that were still owed. As Bozeman notes, given how MCS completed its POC, the POC could only be interpreted to mean that Bozeman owed $6,817.42 and that all of that amount was in arrears, *i.e.*, an accelerated debt. While the Bankruptcy Court did not explicitly discuss this in its opinion, it reasonably treated the POC as representing that the amount owed on the secured debt was only $6,817.42. As to this interpretation and its treatment consistent with it, the Bankruptcy Court did not clearly err.

Pressing its travel-through argument further, MCS argues that the Bankruptcy Court's order conflicts with the Eleventh Circuit's decision in *In re Bateman*, 331 F.3d 821 (11th Cir. 2003).  There, the Eleventh Circuit ruled that, despite the *res judicata* effect that the confirmed chapter 13 plan at issue otherwise would have, a confirmed plan could not modify a mortgage secured solely by the debtor's principal residence because such would violate § 1322(b)(2) (the anti-modification provision). In other words, according to the Eleventh Circuit in *Bateman*, the anti-modification provision of § 1322(b)(2) takes precedence over the binding effect of a confirmation order under § 1327(a).  331 F.3d at 829-34.

But the Supreme Court's decision in *Espinosa* displaced the rationale in *Bateman*, at least to the extent that a creditor had notice that a plan proposed to modify the rights of a creditor.  *See, e.g., Edwards*, 604 B.R. at 423-24.  And neither this Court nor the Bankruptcy Court can ignore it.

MCS also relies on the Eleventh Circuit's decision in *In re Dukes*, 909 F.3d 1306 (11th Cir. 2018), to support its position that the Bankruptcy Court's discharge order improperly modified its mortgage in violation of the anti-modification provision.  As MCS interprets it, "that a long-term debt is incorporated into a Chapter 13 plan has no effect on the conclusion that such long-term debt may not be discharged" and therefore "the fact that Debtor in the instant case proposed a 'full-balance' treatment of MCS's claim has no effect."  (Doc. 9, p. 27.)  But again, like

*Bateman*, at issue in *Dukes* was a cure and maintain plan. *Dukes* is hence not controlling in the present case that involved a full balance plan of which MCS had notice, to which it did not object, and which provided for the MCS debt.

True, a bankruptcy court cannot eliminate a creditor's enforcement rights absent certain very limited scenarios and proceedings. But it can determine with finality the amounts that are owed and enforceable. And where that determination is made in a confirmed plan that the creditor neither objected to nor appealed, the plan is *res judicata* on the amount of debt secured by the lien. *See In re Franklin*, 448 B.R. 744 (Bankr. M.D. La. 2011) (mortgage creditor bound by prepetition arrearage listed in the confirmed plan when it failed to file a timely proof of claim asserting a larger arrearage). Once a plan is successfully completed, including payment of the provided for debt, there is no longer any prepetition debt supporting the *in rem* rights of the creditor. 11 U.S.C. § 1328(a).

Here, the Court concludes that the Bankruptcy Court did not err or abuse its discretion in treating the MCS debt consistent with how the debt was provided for in the confirmed plan. As the Bankruptcy Court correctly noted, MCS's predicament largely stemmed from its own failures; first, to object to the plan and second, to correctly identify its debt in its POC. These failures now dictate the outcome of MCS's requested relief. Accordingly, the Bankruptcy Court's Order, (Doc. 1-2), is due to be and is hereby AFFIRMED.

DONE, this 28th day of December, 2020.

         /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE